ZEBCO COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 5305.

United States District Court N. D. Oklahoma.

June 12, 1963.

## 442

Robert L. McGowen and John S. Athens, of Conner, Winters, Randolph & Ballaine, Tulsa, Okl., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, George A. Hrdlicka, Eugene Emerson, Attorneys, Department of Justice, Washington, D. C., and John M. Imel, U. S. Atty., Tulsa, Okl., for defendant.

BOHANON, District Judge.

This action was instituted by Zebco Company, as plaintiff, against the United States of America, as defendant. Plaintiff will be referred to as either Zebco or Taxpayer. The Taxpayer seeks by this action recovery of $115,061.49, plus interest, for an alleged overpayment of Federal Manufacturers' Excise Taxes. The Taxpayer seeks recovery of taxes imposed by Section 4161 of the Internal Revenue Code of 1954 on fishing reels for the taxable period July 1, 1956 to March 31, 1959, inclusive.

Zebco Company is an Oklahoma corporation with its principal office in Tulsa, Oklahoma. Since the year 1949, it has been a leading manufacturer of fishing rods and reels. It has been engaged in the manufacture and sale of closed face spin cast fishing reels. Its first model, called the "Standard," did not have a removable spool and was not equipped with a fishing line.

In the year 1953 Zebco determined that its fishing reels could best be sold to the public with a fishing line wound on the spool and sold as a unit. When the reels were sold without a line, the customers experienced difficulty in properly winding the line on the spools and this, in turn, had an adverse affect on the sale of the Zebco reels. Consequently, Zebco made it a practice to incorporate the line on a removable spool and to sell its reels together with the spool and line attached thereto. Thus, during the taxable period involved (Quarters ended September 30, 1956 through March 31, 1959), the Taxpayer sold what is known in the trade as a "spinner reel" with a removable spool; each reel assembled and sold was equipped with a fishing line and a replaceable spool on which the line was wound; and the reel, spool and line were sold by the Taxpayer as a unit.

The fishing reel business is a highly competitive industry in which Zebco has gained a leadership position. For the most part, Zebco assembles component parts manufactured by others in the production of its fishing reels. It was the first company in the industry to wind the line on its spools before assembling the component parts of the reel.

In describing the operation of the Zebco reel, the company's instructions point out that, to get the best performance from the Zebco reel, it is absolutely necessary to use the proper kind of line and to install it correctly. It was for this reason that Zebco reels were sold with lines properly wound and installed by the company.

The evidence in the case clearly demonstrates that the spool is a component part of the reel. It is so described by the Taxpayer itself in its instructions; it was so described at the trial with reference to the assembly process; and it was so conceded by the Taxpayer's president on cross-examination.

A fisherman may purchase separate spools for a Zebco fishing reel which may be readily inserted in the reel if a change of test line is desired. Thus, spools with varying weight lines may be interchangeable. This feature, no doubt, has contributed to the marketability of the Zebco reel. However, in the instant suit, the principal issue on the merits is whether a fishing reel equipped with a replaceable spool and line, sold as a unit, is taxable as a fishing reel, or whether the spool is, at least, a part or accessory to a fishing reel under the provisions of Section 4161 of the Internal Revenue Code of 1954. This section, in part, provides:

"There is hereby imposed upon the sale by the manufacturer, producer, or importer of the following articles (including in each case parts or accessories of such articles sold on or

in connection therewith, or with the sale thereof) a tax equivalent to 10 percent of the price for which so sold:

\*     \*     \*     \*     \*     \*

"Fishing rods, creels, reels and artificial lures, baits and flies. \* \* "

It is understood and conceded that spools and lines are separately sold to owners of Zebco reels, but such sales are not subject to the Federal Manufacturers' Excise Tax and no tax is collected for the separate sales of spools and lines.

In connection with Zebco Company's pricing policy, the evidence at the trial revealed that the company's early standard model originally retailed for $17.50. In August 1953 the Taxpayer developed its Model 22 reel, which was its first reel with a removable spool equipped with a monofilament line. The retail price suggested for Model 22 with the removable spool, together with the monofilament line, was similarly set at $17.50, which was the same price which had been charged for the original standard model. At the trial, the Taxpayer's witnesses emphasized that Zebco absorbed the cost of the line since there was no increase in the sales price of the reel. In fixing the suggested retail price for the ultimate consumer, primary emphasis was placed upon what the market would stand. Witnesses testified that Zebco would have charged the same price regardless of the excise tax.

The evidence shows (1) that the Federal excise tax is considered in establishing prices, and (2) that there was no added Federal excise tax which resulted as a consequence of Taxpayer's sale of reels with removable spools equipped with monofilament lines. The Taxpayer's president readily admitted that if Zebco could not make a profit, it would abandon the project or item. Further, it was admitted that it was necessary to consider the tax as an element of cost, just as much as labor, materials, overhead, and distribution costs. Consequently, it is clear that the tax was an element of cost in determining whether or not to proceed with an item's sale at a given retail price suggested by the company. In addition, the Taxpayer's counsel, Mr. Perry, readily admitted that the Federal manufacturers' excise tax was not increased as a consequence of Taxpayer's sale of reels with removable spools equipped with monofilament lines. The manufacturers' sale price was not increased; and, Zebco paid the same tax before and after the addition of the monofilament line.

During the taxable period involved, the Taxpayer filed returns of manufacturers' excise taxes and paid the tax shown to be due thereon to the Director of Internal Revenue, Oklahoma City, Oklahoma. The excise taxes paid and the alleged overpayment for each quarter during the taxable periods involved are as follows (Stip.Ex. 1A–1K; Ex. 2):

| Quarter Ended | Amount of Taxes Paid | Amount of Alleged Overpayment |
| --- | --- | --- |
| September 30, 1956 | $ 41,077.80 | $ 4,727.75 |
| December 31, 1956 | 56,125.61 | 6,184.68 |
| March 31, 1957 | 118,437.91 | 13,104.03 |
| June 30, 1957 | 125,742.79 | 13,504.80 |
| September 30, 1957 | 64,876.51 | 8,266.49 |
| December 31, 1957 | 80,738.23 | 10,604.29 |
| March 31, 1958 | 87,953.68 | 10,219.81 |
| June 30, 1958 | 125,022.43 | 14,356.20 |
| September 30, 1958 | 59,690.67 | 8,663.01 |
| December 31, 1958 | 78,751.53 | 11,063.53 |
| March 31, 1959 | 113,252.02 | 14,366.90 |
| Totals | $951,669.18 | $115,061.49 |

In computing the excise taxes paid, as shown in the above paragraph, the Taxpayer computed the tax as $^{10}/_{110}$, or $^{1}/_{11}$, of the net taxable amount after deductions for cash discounts and freight. Thus, if the tax was not included in the manufacturers' sale price, as the Taxpayer has contended, the correct taxable amount, for each quarter during the taxable periods involved, is as follows (Def. Ex. 5):

| Quarter Ended | Taxable Amount |
|---|---|
| September 30, 1956 | $      451,855.82 |
| December 31, 1956 | 617,789.06 |
| March 31, 1957 | 1,303,318.03 |
| June 30, 1957 | 1,383,583.96 |
| September 30, 1957 | 713,957.76 |
| December 31, 1957 | 899,684.62 |
| March 31, 1958 | 967,876.40 |
| June 30, 1958 | 1,375,602.07 |
| September 30, 1958 | 657,444.31 |
| December 31, 1958 | 866,873.72 |
| March 31, 1959 | 1,246,374.28 |
| Total | $10,484,360.03 |

On September 21, 1959 Taxpayer filed a claim for refund, with the District Director of Internal Revenue, Oklahoma City, Oklahoma, for refund of manufacturers' excise taxes for the period July 1, 1956 through March 31, 1959, inclusive, in the amount of $115,061.49, plus interest. The Taxpayer's claim for refund arose as a result of a Revenue Ruling, 59-224. In Rev.Rul. 59-224, the Internal Revenue Service ruled that the manufacturers' excise tax, under Section 4161 of the Internal Revenue Code of 1954, does not apply to that portion of the manufacturers' sale price attributable to a fishing line, where the fishing line is sold with a taxable fishing reel. Rev.Rul. 59-224 reads in full as follows:

> "When a fishing reel is equipped with a fishing line and sold as a unit, the manufacturers' excise tax on sporting goods, imposed by Section 4161 of the Internal Revenue Code of 1954, applies only to that portion of the manufacturers' sale price of the unit which is properly allocable to the fishing reel, since fishing lines are not enumerated in Section 4161 of the Code and are in the nature of supplies rather than parts or accessories."

The claim for refund referred to above was returned to the Taxpayer with a request that a separate claim for refund be filed for each calendar year. On January 12, 1960 four amended claims for refund, aggregating $115,061.49 plus interest, were filed as follows:

| Period | Amount |
|---|---|
| July 1, 1956 to December 31, 1956 | $  10,912,43 |
| January 1, 1956 to December 31, 1957 | 45,479.61 |
| January 1, 1958 to December 31, 1958 | 44,302.55 |
| January 1, 1959 to March 31, 1959 | 14,366.90 |
| Total | $115,061.49 |

On or about October 24, 1961, Taxpayer, pursuant to notice and demand from the District Director, paid additional excise taxes for the period involved in an aggregate amount of $1,341.86, together with interest.

In its claims for refund, Taxpayer took the position: That the manufacturers' excise tax under Section 4161 applies only to that portion of the sales price properly allocable to the fishing reel alone; that the removable spool and fishing line are supplies rather than a part or accessory of the reel and are not subject to the tax; and that no portion of the manufacturers' excise taxes during the taxable period involved was included in the price of the article with respect to which such taxes were imposed and that no portion of such taxes were collected from, or passed on to, the Taxpayer's vendees.

In rejecting Taxpayer's claims for refund, the Government took the position: That the removable spool contained in the fishing reel is taxable as a part of the reel, or as a part or accessory, under

Section 4161; and that the excise taxes which were paid for the taxable periods involved were passed on to the ultimate consumers.

The evidence in the case reveals that, prior to the issuance of Rev.Rul. 59–224, Taxpayer's invoices incorporated a legend at the bottom of the invoice which read, in part, as follows:

### FEDERAL EXCISE TAX INCLUDED FOR RESALE

Following the issuance of Rev.Rul. 59–224, Taxpayer's invoices were modified to delete the legend noted above.

The evidence further reveals that Taxpayer, in the case of its export sales, or in the case of sales to domestic distributors who were engaged in the export trade, would refund the Excise Tax upon request upon proof of export in accordance with its general, or specific, agreements with such vendees. The procedure followed with Southern Tackle Distributors, Inc. was in accordance with a proposed procedure outlined by Southern Tackle Distributors, Inc. In essence, the procedure called for the submission of a written statement of "Intent to Export," followed by another written statement of "Intent to Export," covering Purchase Orders for a six-months period, and followed thereafter by Proof of Export and application for refund of Excise Tax in a specified amount based on $\frac{1}{11}$th of Southern Tackle's cost of the merchandise involved.

The Court's ultimate findings of fact are:

(a) The spool, upon which was wound the fishing line, is a component part of a fishing reel.

(b) The fishing reel, including the spool and line, were sold by the Taxpayer as a unit for the purpose of achieving market acceptability.

(c) The cost of the line was not passed on to the ultimate vendee since the line was added to the standard model of the company's reel, without effecting an increase in the manufacturer's sale price.

(d) There was no increase in tax paid, which is attributable to the addition of the line, since the company paid the same tax before and after the addition of the monofilament line.

(e) Based upon the weight of the evidence in the case, the Taxpayer did not absorb the burden of the federal manufacturers' excise tax. This is evidenced by the following:

(1) In determining price, the tax was considered an element of cost.

(2) In computing the excise tax paid, the Taxpayer took $\frac{1}{11}$ of the net manufacturer's sale price which indicates that the tax was in fact included in the price.

(3) The company's invoices included the legend: "Federal excise tax included."

(4) In computing the allowance and/or tax refundable, in the case of export sales, the company took $\frac{1}{11}$ of the net manufacturer's sale price which again indicates that the tax was included in its sale price.

Based upon the evidence before the Court, and the applicable law, Section 4161 of the Internal Revenue Code of 1954 (U.S.C. Title 26, § 4161), it is clear that the removable spool was an integral part of the fishing reel, in accordance with the words of the statute. The line, wound upon the spool which was sold with the reel, was an accessory "sold on or in connection therewith, or with the sale thereof." The Court concludes that the Taxpayer has failed to establish its claim for refund, and judgment will be entered accordingly.